Kenneth L. McGEE et al., Appellants,

v.

**PHILLIPS PETROLEUM COMPANY,**
Appellee.

No. 5579.

Court of Civil Appeals of Texas.

El Paso.

Nov. 20, 1963.

Rehearing Denied Jan. 8, 1964.

John J. Watts, Thomas A. Sneed, James D. Cunningham, Odessa, for appellants.

Carl W. Jones, Midland, James Little and Jack Little, Big Spring, Wm. J. Zeman and Lloyd G. Minter, Bartlesville, Okl., for appellee.

CLAYTON, Justice.

■ This is a summary judgment case. The trial court rendered a summary judgment in favor of appellee, Phillips Petroleum Company, against appellants, Kenneth McGee and others. Appellants originally instituted suit against Woodrow Douglas Oil Company and appellee Phillips Petroleum Company, but took a non-suit against Douglas following the trial' court's action in granting the summary judgment in favor of Phillips, thus making the trial court's order in such respect appealable as a final judgment.

The suit was for damages arising out of a truck-automobile collision which occurred in Ward County on or about July 5, 1960, when a automobile being driven by Shirley McGee (wife of appellant Kenneth L. McGee) collided with a truck being driven by one Floyd Morgan Cawley. Appellant's wife was killed and his three minor daughters sustained personal injuries. Appellants' suit against appellee is based upon the contention that the driver of the truck (Cawley), on the occasion in question, was an agent, sub-agent or employee of Phillips Petroleum Company.

By way of answer Phillips filed a general denial to appellants' petition and then filed its motion for summary judgment asking that it be dismissed from the cause on the grounds that Cawley, the driver of the truck, was not an employee of Phillips and that no circumstances existed which would permit his actions, on the occasion in question, to be imputed to Phillips. Appellee alleged in the motion that Cawley was an employee of the other defendant in said cause—namely, Woodrow Douglas Oil Company, and that at the time of such accident was driving a truck owned by the said Woodrow Douglas Oil Company. Appellee's motion is supported by attached affidavits and a copy of a "Jobber Sales Contract" admittedly entered into between appellee and Douglas, and it is appellee's contention that such affidavits and exhibits, together with the depositions and pleadings on file, show that there is no genuine issue of fact raised with reference to the responsibility of Phillips for the consequences of the actions of Cawley, the driver of the truck, at the time of such accident, and that it (Phillips) is therefore entitled to a summary judgment dismissing it from this action, as a matter of law.

Appellants filed no opposing affidavits, but replied to appellee's motion for summary judgment, asserting that the evidence in the depositions on file, the provisions of the "Jobber Sales Contract" between appellee and Douglas Oil Company, the actual conduct of the parties and the condition of the business in which they are engaged establishes that the relationship between appellee and Douglas and its employees is that of a principal-agent relationship, or principal-sub-agent relationship, and/or master-servant relationship, and that a genuine issue of fact exists as to whether or not the negligence of Douglas Oil Company and/or its driver is imputable to Phillips Petroleum Company.

Appeal is predicated upon a single point by which it is contended that the trial court erred in sustaining the motion for summary judgment because the evidence showed that Phillips had the right to control Woodrow Douglas Oil Company and its employees in the details of the work necessary to be performed in the conduct of the business, thus rendering Phillips liable for the negligent acts of the driver Cawley on the occasion of the collision in question.

■ Since this is a summary judgment action under Rule 166–A, Texas Rules of Civil Procedure, we are governed by well-established principles announced by the Supreme Court of Texas in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929. Thus,

when Phillips Petroleum Company, as defendant in the court below, moved for summary judgment it assumed the negative burden of showing, as a matter of law, that appellants have no cause of action against it. Neigut v. McFadden, Tex.Civ.App., 257 S.W.2d 864; Statham v. City of Tyler, Tex.Civ.App., 257 S.W.2d 742; Achterberg v. Gillett, Tex.Civ.App., 322 S.W.2d 306; Seale v. Muse, Tex.Civ.App., 352 S.W.2d 534; Glasgow v. Floors, Inc. of Texas, Tex.Civ.App., 356 S.W.2d 699.

The undisputed facts, disclosed by the record before us, reflect that Floyd Morgan Cawley was the driver of the truck on the occasion of the accident in question; that the truck was owned by Woodrow Douglas Oil Company, and that Cawley was in the general employment of such company at the time of the accident. The truck in question was a semi-trailer tank truck with the name "Phillips 66" lettered on the tank trailer portion of the truck. It is also undisputed that Woodrow Douglas Oil Company had a written contract with Phillips Petroleum Company. The contract is in evidence. It is identified as a "Jobber Sales Contract"; is for a primary term of one year (from March 6, 1960 to March 5, 1961), and for successive periods of one year each thereafter, or until either party shall notify the other, in writing, at least 90 days prior to the expiration of the primary term or of any succeeding one-year period, of its desire to terminate the contract; it provides that during the term of the contract Phillips Petroleum Company (Seller) agrees to sell and Woodrow Douglas Oil Company (Buyer) agrees to purchase from Seller, within specified minimum and maximum monthly limits, certain petroleum products. The contract is clearly one of sale and not one of consignment. The terms of payment provide that Buyer shall be entitled to one per cent discount on the net invoice price for payments made in full within ten days from the date of the invoice, but provides that Seller shall have the right to decline to make delivery of its petroleum products to Buyer except for cash payable upon delivery whenever Seller shall have any doubt as to Buyer's financial responsibility. Other provisions of the contract give Seller "first refusal" of the right to purchase, lease or otherwise acquire Buyer's petroleum products business and/or properties in whole or in part should Buyer receive a bona fide offer therefor which Buyer desires to accept. Buyer is required to give Seller notice of the terms and conditions of the offer if it desires to accept, and Seller shall have 30 days thereafter in which to exercise its option to purchase, lease or otherwise acquire the business and/or properties on the same terms of such proposal. Buyer agrees to protect the brand or trade names of Seller's petroleum products and to sell such products under the respective brand names only, it being provided that in the event of any violation of the "brand protection" clause of the contract Seller shall have the right to terminate the contract immediately without notice, or suspend shipment of petroleum products under the contract during the period of such violation. Seller agrees to lend Buyer certain of Seller's advertising media (signs, pump globes, etc.) the same to remain the property of Seller and to be returned to Seller upon demand. It is specified that the terms of the contract shall be binding upon and shall inure to the parties thereto "and their respective heirs, executors, administrators, successors and assigns; provided, however, that Buyer shall not assign this contract in whole or in part without the written consent of Seller."

█ Thus far, under the undisputed facts set out above, only one favorable presumption from the standpoint of appellants' contentions may be drawn from such evidence. There is a presumption that one whose name appears on a truck or vehicle is presumed to be the owner thereof and the employer of the one operating it. However, the presumption itself is not evidence, and disappears the moment that the contrary is shown by the undisputed evidence. McCormick & Ray, Texas Law of Evidence, 2nd Ed., Sec. 56, Vol. 1, Ch. 3, p.

69 et seq.; Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763 (adopted opinion of Com.App.); Houston News Co. v. Shavers, Tex.Civ.App., 64 S.W.2d 384 (wr.ref.).

Considering, alone, the express provisions of the "Jobber Sales Contract" discussed above, we would be compelled to conclude, as a matter of law, that Woodrow Douglas Oil Company was an independent contractor in its dealings with Phillips Petroleum Company, and consequently the negligence of its employees could not be imputed to Phillips by reason of any provision of the written contract. But, as we held in McMahan v. Herring, Tex.Civ. App., 348 S.W.2d 679, "Such provisions, however, cannot be taken alone, but must be viewed along with all other evidence bearing on the relationship of the parties, contractual and otherwise. Humble Oil & Refining Co. et al. v. Martin, et al., 148 Tex. 175, 222 S.W.2d 995."

Mrs. Carl Sawyer, President of Woodrow Douglas Oil Company, stated in her deposition and in her affidavit filed in support of appellee's motion for summary judgment, among other things, the following: That she has been familiar with the operations of Woodrow Douglas Oil Company since its beginning in 1944 and its incorporation in 1955; that her company had for many years marketed Phillips Petroleum Company products in her company's retail outlets under contracts with Phillips similar to the contract discussed above; that Phillips owns no stock in her company and that the Woodrow Douglas Oil Company has always been in the position of keeping the profits of its operations and bearing its own losses; that her company buys from and pays Phillips for gasoline which her company then sells for cash or credit, as it sees fit, at prices fixed by her company; that while it has been the custom of Douglas to sell Phillips' products, Douglas is not restricted in the contract with Phillips to selling only their products (except that Douglas must protect Phillips' trademark), and that Douglas has sold other products since it has been in operation, but only Phillips' gasoline. Further, that at the time of the accident in question, Floyd Morgan Cawley was driving a truck registered in the name and owned by Woodrow Douglas Oil Company; he was transporting gasoline for Woodrow Douglas Oil Company; he was on its payroll and was one of its regular employees acting within the course of his employment at the time of such accident. Mrs. Sawyer also stated that her company employs, controls, pays, and discharges it own employees; that it fixes its own hours for opening and closing its business and stations; that it owns and finances its own trucks and pays all of its own utilities, license fees, taxes, etc.; it has "Phillips 66" printed on its trucks and "Phillips 66" signs on its stations because "we feel it is to our advantage to make it clear we are handling Phillip's products in order that we will benefit from their advertising programs." That neither she nor the manager, nor any of the employees of Douglas draw any salary of any kind from Phillips. That within its assigned territory, station locations of Douglas are determined following its own investigation, and it operates such stations as it wishes or shuts them down as it wishes without any intervention of Phillips. It makes no official reports of any kind to Phillips, as to sales, number of employees, etc. It has a friendly working relationship with Phillips and encourages its suggestions in areas where they might improve the operation of Douglas or help it sell more goods or services. However, Douglas runs its business and Phillips runs its, and no control or right of control on its (Phillips) part over Douglas' employees is recognized; nor does Douglas recognize any right of financial control over its operations on the part of Phillips, and the latter has never indicated that it feels that it has any right of financial control over the former.

Mrs. Sawyer admitted that her company (Woodrow Douglas Oil Company) had borrowed money from Phillips in the past on buildings and equipment (other than

trucks) and in such cases had always paid interest at the rate of six per cent and had given full security for such loans in the form of deeds of trust, etc. She also admitted that she permitted Phillips to examine the books of her company if it desired to do so, and to make suggestions about her company's accounting operations, but stated that she regarded such comments as mere suggestions "which we follow or refuse to follow as we see fit."

In many respects the above statements were corroborated by the deposition of the district salesman of Phillips Petroleum Company, and also, in all material respects, by Carl Sawyer, the general manager of Woodrow Douglas Oil Company, by deposition and affidavit. Of special significance, we believe, is the latter's testimony as follows:

"Q. Does Phillips Petroleum Company attempt to give any orders or instructions to any of your drivers?

"A. No, sir.

"Q. As to how they are to perform their work?

"A. No."

We believe that the foregoing is a full review of the evidence adduced upon the motion for summary judgment relative to the relationship of the parties herein, and upon which evidence appellants maintain that "Phillips Petroleum Company had the right to control Woodrow Douglas Oil Company and its employees in the details of the work necessary to be performed in the conduct of the business, thus rendering Phillips Petroleum Company liable for the negligent acts of Floyd Morgan Cawley on the occasion of the collision in question." Carefully considering all the above evidence, as we are admonished to do in the Supreme Court case of Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995 (a case relied upon by appellants), we reach a decision contrary to that asserted by appellants. We believe that the evidence in this case is quite similar to that

presented in Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632 (distinguished by the Supreme Court in the Martin case), in which the Supreme Court, in discussing the relationship of the Texas Company with one Gossen, a lessee of a filling station from the Texas Company, held:

"Whether or not the relation of master and servant existed between the Texas Company and Gossen so as to make the doctrine of respondeat superior applicable, depends on whether the Texas Company had the right to control Gossen in the details of the work to be performed in the operation of the service station. Carter Publications, Inc., v. Davis, Tex.Civ.App., 68 S.W.2d 640, 641, writ refused; Lone Star Gas Co. v. Kelly, Tex.Com.App., 46 S.W.2d 656."

" * * * The fact that Gossen paid rent, bought and paid for the merchandise, bore all the expenses of operating the station, employed and controlled the employees in the discharge of their work, stood the losses and appropriated the profits is consistent with the relationship of landlord and tenant, and inconsistent with that of master and servant."

In the case before us, we fail to find in the record any showing that Phillips Petroleum Company had the right to control the Woodrow Douglas Oil Company or any of its employees in the details of the work to be performed in the operation of the latter company; that from all the evidence Cawley, the driver of Douglas' truck at the time of the collision, was an employee of Douglas and was not an agent, sub-agent or employee of Phillips so as to impute to the latter any actions of the former; and that the summary judgment was therefore properly granted.

Finding no error on the part of the trial court, its judgment is in all things accordingly affirmed.

PRESLAR, J., not participating.