Leroy SWIFT, Appellant,

v.

**AETNA CASUALTY AND SURETY
COMPANY, Appellee.**

No. 320.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Jan. 7, 1970.

and that his accidental injury was a producing cause of total and permanent loss of the use of his hand. The compensation carrier made a motion for judgment non obstante veredicto contending that the evidence showed as a matter of law that Swift was an independent contractor and not an employee of Key. The trial court granted such motion and rendered judgment for the carrier. Swift has appealed.

■ The appellant's points of error present the contention that the trial court erred in holding that the evidence established as a matter of law, that the appellant was an independent contractor. In ruling on those points this Court is required to "consider only the evidence and the inferences tending to support the (Jury's) finding and disregard all evidence and inferences to the contrary. * * *" (Parenthesis added). Garza v. Alviar, (Tex.Sup.Ct.), 395 S.W.2d 821, 823.

■ The appellee, in addition to countering appellant's points of error, has presented cross-points to the effect that the jury's findings that appellant was not an independent contractor but was an employee have insufficient support in the evidence and are against the overwhelming weight of the evidence as a matter of fact. These cross-points are authorized by Rule 324, Texas Rules of Civil Procedure. In passing upon those cross-points, we are required to consider all of the evidence relating to their subject matter. Texaco, Inc. v. Faris, Tex.Civ.App., 413 S.W.2d 147, n. r. e.

The written contract in question consists of three documents. They did not spell out many of the details of the relationships between the parties. The basic agreement, signed by both parties on March 21, 1966, is designated a "LEASE AGREEMENT." It described the location of the station, it provided for the payment by lessee of a rental of 1¢ per gallon of gasoline sold, it provided that lessor shall pay for the utilities and for major upkeep of the premises, it limited the use of the premises to that of a filling station, it provided that

Thomas A. Adams, III, Knight, Prappas, Rowland & Caldwell, W. James Kronzer, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellant.

Harry L. Tindall, Dixie Smith, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

TUNKS, Chief Justice.

On March 21, 1966, the appellant, Leroy Swift, and Key Oil Company, herein referred to as Key, executed a written contract pursuant to which Swift became the operator of a filling station owned by Key. On July 8, 1966, Swift accidentally injured his hand while operating the station. By this suit Swift seeks recovery of workmen's compensation benefits from Aetna Casualty & Surety Company, the compensation carrier for Key. The principal controversy in the trial court and here relates to the status of Swift at the time of the injury as being that of an independent contractor or an employee of Key. In the trial court the jury found that Swift was not an independent contractor, that he was an employee

lessee be responsible for liabilities to his employees and visitors and that lessee hold lessor free from such liabilities, it made lessee responsible for upkeep of the premises and equipment and it could be cancelled by either party upon notice.

At the same time that the lease agreement was signed another instrument called "Amendment to lease agreement" was signed. This agreement provided that lessee be responsible for consigned merchandise and furnish periodic inventories, that lessor pay personal property taxes on the consigned stock and that the agreement could be cancelled by either party without notice.

A third instrument was involved in the transaction. It was not signed by either party but a copy of it accompanied the other two instruments. This third paper was called "LL PLAN." The "LL PLAN" recited that:

> "The lessee at each station will own his own oil, cigarettes, cold drinks, TBA, etc., and he will receive the full profit from all sales of this nature and all service work. Gasoline, kerosene, and diesel stocks would be owned by Key Oil Company, and a margin on these items will be allowed as per the following table. Key will not guarantee the lessee a minimum income on this basis. All supplies used at the station will be paid by lessee."

This language is followed by a column of figures headed "Lessee Margin Per Gallon." In this column are set out the amounts per gallon to be paid to Swift for each gallon of gas sold at prices per gallon which prices are set out in corresponding columns. The payments to Swift per gallon sold vary from 5.2¢ for each gallon of ethyl gasoline sold at 31.9¢ and for each gallon of regular gas sold at 29.9¢ to 1.9¢ paid for each gallon of white gas sold at 19.9¢ per gallon. The instrument then recites, "Lessee Margin is subject to payment of 1¢ per gallon to Lessor to cover rent and utilities."

■■ In determining whether a particular relationship constitutes an employer-employee relationship, the controlling question is whether the alleged employer has the right to control the alleged employee in the details of the work to be done. Anchor Casualty Co. v. Hartsfield, (Tex. Sup.Ct.), 390 S.W.2d 469; Newspapers, Inc. v. Love, (Tex.Sup.Ct.), 380 S.W.2d 582. If the relationship in question exists by virtue of a contract between the parties which is specific in treatment of the matter of the right of one to control the other, that contract is conclusive as to the nature of the relationship. However, if the parties have made a purported contract which is specific on the subject of the right of control by one of the other, that purported contract is not conclusive on the question of the right of control if there is evidence from which it can be found that it was a subterfuge by the contracting parties or that it has been abandoned by them. Newspapers, Inc. v. Love, supra.

The written contractual arrangement of the parties here was not specific in its treatment of the right of Key to control the appellant in the details of his work in running the filling station. It did not specifically give Key such right of control but neither did it exclude such right. It did not give the appellant full authority as to the details of the running of the filling station owned by Key. The relationship created by the written contract was nebulous, indeed. It purported to be a lease agreement but did not give the "lessee" a right to any continued possession. It was made terminable at the will of the lessor and without notice by one of the provisions therein. It did not oblige the lessee to pay rent for a definite period of time because it was also terminable at the will of the lessee. Some of the language used indicated that the parties contemplated that Key would deliver gasoline to the station on consignment to the appellant, but it did not follow the usual form of a consignment contract. It did not provide for delivery at a fixed price that the appellant should pay to Key when the consigned gasoline was

sold, but set up a varying amount of the sales price which appellant should receive when the consigned product was sold. It merely suggests that consignments were contemplated without setting out any terms or conditions under which Key was obliged to deliver gas or Swift obliged to accept it. It did not say which party had the right to fix the sale price which would determine the amount per gallon that the appellant was to receive.

■ In short, there was not such specific language in the written contract as to be conclusive on the question as to whether the status of the appellant was that of an employee or an independent contractor. Other evidence as to the nature of the relationship is, therefore, relevant and controlling. The plaintiff-appellant had the burden of proving from such other evidence that he was an employee. Anchor Casualty Co. v. Hartsfield, supra. That is to say, the plaintiff had the burden of proving that Key Oil Company had the right to control him in the details of his work connected with the running of the filling station.

■ Even if the written contract had been specifically to the contrary on the subject, evidence of persistent exercise of control by Key and appellant's pronounced acquiescence therein would have sustained a finding that Key actually had the right of control. Newspapers, Inc. v. Love, supra. A fortiori where, as here, there is no specific contractual provision as to control the alleged employer's actual exercise of control and the alleged employee's acquiescence therein, are evidentiary of Key's right to control. In fact, one claiming to have occupied the status of an employee makes a prima facie proof thereof when he shows that he was performing services peculiar to the alleged employer's business on the latter's property. McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442. The evidence as to Key's exercise of control with Swift's acquiescence therein was admissible to refute the inference that might have been drawn from the written instruments involved, that the relationship between the parties was the usual lessor-lessee relationship or the usual consignor-consignee relationship if those instruments were of such a nature as to create such an inference.

We have reviewed the evidence in this record with reference to the above stated rules of law.

Key was the owner of the station operated by the appellant and the equipment thereof. Appellant's occupancy of the premises was terminable at the will of Key. Appellant could, at will and without notice, abandon the premises and terminate his obligation to pay rent. Key exercised control over the products that could be sold from the station. It permitted the sale of candy, cigarettes and cold drinks but prohibited the sale of tires. Appellant kept all of the profit from the sale of the candy, etc., and from the repair of tires. There was testimony from which the jury could have believed that the hours at which the appellant was required to open and close the station were fixed by Key. Paul S. Wakefield was a supervisory employee of Key through whom the appellant conducted his transactions with Key. There was testimony that Wakefield gave appellant specific direction as to the maintenance of the premises, pointed out rubbish and told appellant to remove it, told appellant to wash down the front of the station and brought him soap to be used in doing so. Wakefield visited the station frequently and actually helped in the servicing of customer's cars. The record suggests that it was Wakefield that kept track of the gasoline on hand, determined when to order more gasoline, how much to order and actually placed the orders.

Key retained ownership of the gasoline delivered to the station until it was sold by appellant to a customer. The appellant did not pay to Key any amount per gallon of gasoline fixed by Key or by agreement of the parties at the time of its delivery.

But, as noted above, he was paid an amount per gallon determinable by the price at which the gasoline was sold. The amount paid to, or retained by, the appellant was not a uniform percentage of the retail price. The written contract provided that appellant was to pay 1¢ per gallon as rent, or as rent and for utilities, but the same mathematical result would have been accomplished if the figures in the "lessee margin per gallon" column each had been reduced 1¢. As noted above, the written contract was silent upon the question as to who should control the price at which appellant was to sell the gasoline delivered to him, but the evidence showed that Key exercised that control. Wakefield testified that it was he who made the price changes, sometimes after consultation with the appellant, and that appellant never changed the prices fixed by him and didn't even know how to change the prices shown on the pumps. Appellant testified that he was not allowed to change the retail price.

The station operated by the appellant sold gasoline at 5¢ to 6¢ a gallon less than the major oil company stations and could not have operated in competition with them without such price differential. Wakefield was in a better position to adjust the prices so as to keep the station competitive than was the appellant. For that reason Wakefield's control of the retail price was beneficial to the appellant.

The procedure by which the parties adjusted their accounts is a matter of some dispute. Wakefield testified that he would go to the station several times a week and read the meters on the gas pump. He would then compute the amount due the company under the "LL PLAN" and collect the money due it from that money which the appellant had on hand in the cash register. He did not always follow a regular schedule as to the days on which he would collect the money. He did not get appellant's permission to change the days on which he would collect the money. Appellant testified that Wakefield would read the gas pump meters, then tell appellant how much money he wanted. Sometimes he wanted all of the money that appellant had on hand. Wakefield would take the money and come back when "he would have everything figured out." Then, "he would pay me." There was no consultation between the parties as to the days on which Wakefield would come to collect the money, appellant wouldn't know in advance when he was coming to collect.

Because of Key's right to terminate the lease at will and without notice and because Key did not have any contractual obligation to deliver any gasoline at any time if it did not wish to do so, Key effectively had the right to terminate Swift's operation of the station if it so desired.

Key Oil Company did not list the appellant on its payroll records as an employee and did not withhold income taxes or Social Security payments as to any money paid to him. The company had a program of employee benefits which were not extended to appellant. Aetna Casualty and Surety Company did not collect workmen's compensation premiums from Key relative to appellant's employment.

Appellant did not have any regular employee to help him run the station. He operated separately a trucking business. Sometimes the drivers employed in that business would be at the station and would repair tires or wash and grease cars. These drivers were paid half of what was charged to the customers for those services. There was testimony that a lady who did some bookkeeping for appellant's trucking business had sold some candy at the station and on occasion signed receipts in behalf of the station.

■ This evidence was evidence of an employer-employee relationship between Key Oil Company and Swift. The jury's finding of such relationship was supported by sufficient evidence and was not so against the weight of the evidence as to be clearly wrong.

The parties have cited a number of cases involving fact situations of varying degrees

of similarity. In this respect the appellant cited Texas Co. v. Freer, Tex.Civ.App., 151 S.W.2d 907, writ dismd., judgm. cor. In that case on less persuasive evidence than there is in this case the Court held a filling station operator to be the employee of the oil company who subleased the station to him and furnished the products he sold. The appellee cited Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632, wherein the station operator was held not to be an employee. That opinion distinguished the Freer case on the facts. It seems that the facts of this case are even more clearly distinguishable. The other cases cited do not bear a close enough factual similarity to be helpful as precedents in the application of the controlling rules of law set forth above.

The judgment of the trial court is reversed and judgment is here rendered for the appellant.