Dennis O'NEILL, Appellant,

v.

STARTEX PETROLEUM, INC., et al., Appellees.

No. 14473.

Court of Appeals of Texas, Austin.

Aug. 13, 1986.

Rehearing Denied Sept. 24, 1986.

Timothy M. Sulak, Morris, Craven & Sulak, Austin, for appellant.

Michael G. Mullen, Brown, Maroney, Rose, Barber & Dye, Austin, for appellees.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

GAMMAGE, Justice.

Dennis O'Neill sued Stacy Oliver, Startex Petroleum Corporation (incorrectly named "Startex Petroleum Inc." in O'Neill's pleadings), and Theodore LaTouf d/b/a "Ted's Quikie Pickie" to recover damages for injuries O'Neill suffered during an armed robbery of the gasoline station and convenience store ("the premises") where he worked. The trial court severed all claims against Startex and Oliver and granted summary judgment in their favor, and O'Neill brought this appeal. We will reverse the judgment and remand the cause to the trial court.

Oliver was president and sole stockholder of Startex. Oliver owned the premises and leased them to Startex, which subleased them to LaTouf. The sublease agreement required LaTouf to operate the business under Startex's trade name, "Quikie Pickie". In August 1982, LaTouf hired O'Neill to work at the business. On September 12, 1982, Ted's Quikie Pickie was robbed and O'Neill was shot. O'Neill subsequently underwent surgery and has suffered permanent disability. Because neither LaTouf nor Startex carried workers' compensation insurance at the time of the robbery, O'Neill brought this suit as a common law action for negligence.

Summary judgment is a harsh remedy which must be strictly construed. *International Ins. v. Herman G. West, Inc.*, 649 S.W.2d 824, 825 (Tex.App. 1983, no writ). It is proper only when "there is no genuine issue as to any material fact and the mov-

ing party is entitled to judgment as a matter of law...." Tex.R.Civ.P.Ann. 166–A(c) (Supp. 1986); *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex. 1983). In determining whether there is a genuine issue of fact in a case, the evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Gaines v. Hamman*, 358 S.W.2d 557, 562 (Tex. 1962). The burden of demonstrating the lack of a genuine issue of material fact is upon the movant, and all doubts are resolved against the movant. *Smith v. University of Texas*, 664 S.W.2d 180 (Tex.App.1984, writ ref'd n.r.e.).

By his first two points of error, O'Neill asserts that the trial court erred in granting summary judgment for Oliver and Startex (hereinafter collectively referred to as "Startex") because genuine issues of material fact exist regarding Startex's right to control the use of the premises and operation of the business. The retention of such right to control would impose upon Startex a duty of reasonable care to make the premises safe or warn employees of dangers inherent on them.

The contract between the oil company/landowner and the service station operator must be examined to determine the nature of the relationship between them. If the relationship is one of landlord and tenant, the landlord generally owes no duty to the tenant's employee; if on the other hand, it is that of master and servant, the master owes a duty of ordinary care. In *Texas Company v. Wheat*, 168 S.W.2d 632 (Tex. 1943), the Supreme Court held that the existence of a master-servant relationship depends on whether the owner has the right to control the details of the work to be performed in the operation of a service station. In *Wheat*, the court determined that the evidence established a landlord-tenant relationship, not one of master and servant, and refused to hold the oil company liable for personal injuries suffered by a pedestrian who fell on an oily sidewalk in front of the station.

In *Humble Oil & Refining Co. v. Martin*, 222 S.W.2d 995 (Tex. 1949), the Supreme Court analyzed a lease agreement between the oil company lessor and the lessee and found the existence of a master-servant relationship. "The question is ordinarily one of fact, and where there are items of evidence indicating a master-servant relationship, contrary items ... cannot be given conclusive effect." *Id.* at 998. The court pointed to several factors: Humble retained title to products until delivery to the customer; Humble maintained a strict system of financial control and supervision; Humble furnished the station location, equipment, and advertising; it controlled hours of operation; and had a commission agreement. The court distinguished *Wheat* as a case "in which the lessee in charge of the filling station purchased from his landlord ... and sold as his own, and was free to sell at his own price and on his own credit terms, the company products purchased, as well as the products of other oil companies." *Id.* The court also pointed out that in *Wheat* the company did not control the working hours of the station.

Subsequent cases have examined the actual control exercised by the property owner, as well as the right of control over the premises and the operation of the business under the contract. In *Space City Oil Company v. McGilvray*, 519 S.W.2d 257 (Tex.Civ.App.1975, no writ), a customer brought a suit for personal injuries against a service station owner. The Court of Civil Appeals held that the questions of whether an agency relationship existed and whether the company had a right of control over the station operator were fact questions. The agreement in that case provided, among other things, that the oil company owned the station, equipment, and land; that all gasoline had to be purchased from the company; and that the company set the prices and controlled the hours of operation.

In *Beckham v. Exxon Corporation*, 539 S.W.2d 217 (Tex.Civ.App.1976, no writ), a summary judgment was affirmed where the service station operator purchased gasoline from the oil company, was free to sell

the petroleum products of other oil companies, and set his own prices. The oil company required the operator to remain open 24 hours a day. *Beckham* distinguishes *Martin* in that in the latter case the station operator was required to make periodic reports, and in that title to the oil and gas remained in the oil company until delivery to the customer. The *Beckham* case arose from an auto collision involving a wrecker driven by an employee of the service station. *See also Texas Co. v. Freer*, 151 S.W.2d 907 (Tex.Civ.App.1941, writ dism'd judgt corr.). *But see Edwards v. Neely Oil, Inc.*, 556 S.W.2d 114 (Tex.Civ.App. 1977, writ ref'd n.r.e.); *Willman v. Texaco, Inc.*, 535 S.W.2d 774 (Tex.Civ.App.1976, writ ref'd n.r.e.).

In *Daniels v. Shell Oil Company*, 485 S.W.2d 948 (Tex.Civ.App.1972, writ ref'd n.r.e.), summary judgment for the oil company was upheld where the appellants admitted that the evidence established a landlord-tenant relationship. The Court of Civil Appeals held that *"where the entire premises have been let* a landlord does not owe to either his tenant or to his tenant's employees a duty to protect them from robberies or assaults committed by third parties over whom the landlord has no control even though the robbery or assault does occur upon the leased premises during the term of the lease." *Id.* at 951 (emphasis added).

■ "An owner or occupier of land has a duty to use reasonable care to keep the premises *under his control* in a safe condition." *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985) (emphasis added); *Smith v. Henger*, 226 S.W.2d 425 (Tex. 1950). If a right of control over the details of work has a contractual basis, the circumstance that no actual control was exercised will not absolve the master of liability for the torts of his servant. *Newspapers, Inc. v. Love*, 380 S.W.2d 582 (Tex. 1964). The duty to keep the premises safe may subject the owner or occupier to direct liability for negligence in situations where the owner retains some control over the manner in which the independent contractor's work is

performed, but does not retain the degree of control which would subject him to liability as a master. *Redinger v. Living, Inc., supra.*

■ In its sublease agreement with LaTouf, Startex retained its exclusive use of the premises as a self-service gasoline sales and dispensing facility and prohibited LaTouf from selling petroleum products other than those furnished by Startex. Startex retained title to all its equipment on the premises and to any equipment it might place there in the future. All gasoline remained the property of Startex until sold.

LaTouf was required to pay rent of $1200.00 per month or 6% of "inside" gross sales from the convenience store, whichever was greater. LaTouf received a commission of two cents per gallon of gasoline sold. Startex required that the premises be open eighteen hours a day beginning at 6:00 a.m., seven days per week, excluding Christmas Day. Startex further required that sales of gasoline and other products be by cash, check or credit card approved by Startex, but disclaimed responsibility for dishonored personal checks and credit cards. Startex set the sales price for the gasoline and other products.

The agreement restricted the use of the premises to that of service station and convenience store, and required LaTouf's "full time and best efforts to the operation and use of said premises for these purposes." Alterations, improvements or changes in the buildings, landscapes or driveways were prohibited without the express written consent of Startex. Startex reserved the right to remove, repair, modify or replace its equipment, and to place additional equipment on the premises. The agreement prohibited alteration of the painting, design and colors applied to Startex's building and equipment.

Paragraph seven of the agreement required LaTouf to deposit daily into Startex's bank account all proceeds from the sale of gasoline or products supplied by Startex, in the form of currency or La-Touf's personal or business check. LaTouf was further required to prepare and mail

daily marketing reports to Startex. In paragraph eight, Startex retained the right to place its own personnel or to fine La-Touf if he failed to operate the business for all or part of a day upon which he was required to operate.

Under the *Wheat* and *Martin* line of cases, the present appeal raises issues of material fact regarding Startex's right to control the operation of the service station so as to establish a master-servant relationship and the duties it entails. Even if the relationship is one of an independent contractor, issues of material fact exist because liability can be extended to an owner for negligence where the owner retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master. *Redinger v. Living, Inc., supra.*

Startex contends that even if the agreement between Startex and LaTouf gave rise to any legal duties, the breach of any such duties as a matter of law would not have proximately caused O'Neill's injuries. In a summary judgment proceeding a movant "must establish his entitlement to a summary judgment on the issues expressly presented to the trial court...." City of *Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex. 1979). Startex's motion for summary judgment raised only the issue of an absence of any duty on its part to protect employees on the premises from injuries caused by a third party in an assault or robbery. By failing to assert the proximate cause contention in its motion, Startex is precluded from now raising it in support of the summary judgment.

Startex alleges that O'Neill did not file a timely response to its motion for summary judgment setting forth any disputed factual issues and that O'Neill is therefore precluded from complaining on appeal that genuine issues of material fact exist regarding Startex's right to control the operations and employees or whether Startex provided a safe work place. Tex. Rule Civ.P.Ann. 166–A(c) (Supp. 1986) re-

quires the filing of opposing affidavits or other written response to a motion for summary judgment not later than seven days prior to the day of hearing. The record indicates that O'Neill's response was filed November 16, 1984, and that the hearing was held December 13, 1984. The response specifically alleges "that there are genuine issues of material fact regarding the legal duties and obligations owed" to O'Neill by Startex. Startex complains that this response did not adequately define the issues for summary judgment purposes and that by not filing any opposing affidavit, O'Neill waived any basis to allege the existence of disputed issues of material fact. The adequacy of O'Neill's response is immaterial because he was not required to file a response to urge on appeal that Startex's proof was insufficient to establish as a matter of law the specific grounds relied on by Startex. *Fantastic Homes, Inc. v. Combs,* 596 S.W.2d 502 (Tex. 1979); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex. 1970).

O'Neill's first and second points of error are sustained. Because of our disposition, we need not address his third point. The judgment of the district court is reversed and the cause remanded for trial on the merits.