**EXXON CORPORATION, Petitioner,**

v.

**Mary TIDWELL and Terry Tidwell, Respondents.**

No. D–1639.

Supreme Court of Texas.

Dec. 8, 1993.

Molly H. Anderson, Tyler, William R. Hurt, Peggy O. Donley, Houston, Michael A. Hatchell, Tyler, for petitioner.

Robert C. Fults, Timothy M. Fults, Dallas, Smith E. Gilley, Greenville, for respondents.

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HIGHTOWER and HECHT, Justices, join.

The issue in this case is whether an oil company owes a duty of ordinary care to protect a tenant service station's employees from the criminal acts of third parties. We hold that whether such a duty exists depends on whether the oil company possessed a right of control over the safety and security of the station. Because we announce a change in the legal standard applied by both the court of appeals and the trial court, we reverse the judgment of the court of appeals and in the interest of justice remand this cause to the district court for a new trial. TEX.R.APP.P. 180.

Jerry Morgan leased a twenty-six year old full-service gas station located at the intersection of I.H. 30 and U.S. Highway 69 in Greenville, Texas, from the Exxon Corporation. Morgan employed Terry Tidwell at the station as an attendant. At approximately 10:00 p.m. on November 4, 1987, Tidwell was shot during a robbery attempt by Todd Jones, who entered the service station through an open garage bay door. Tidwell, the only attendant on duty at the time, suffered gunshot wounds to the face and arm.

Tidwell and his mother[1] subsequently sued Exxon for failure to maintain a safe workplace. Following a bench trial, the Tidwells secured a judgment against Exxon for $382,716.48, plus prejudgment interest. The court of appeals reversed the portion of the judgment awarding mental anguish damages to Tidwell's mother and affirmed the judgment in all other respects. 816 S.W.2d 455. We granted Exxon's application for writ of error to consider its argument that the court of appeals erred in holding that Exxon owed a duty of ordinary care to protect its tenant's employees from the criminal acts of third parties.

Oil companies typically sell gasoline, oil, and related automobile products through individual dealers who lease service stations and enter into sales agreements to sell that company's products. In such an arrangement, the relationship between the oil company and the operator is formally controlled by two documents: a lease, which usually restricts the tenant's right to make certain alterations and requires certain business practices and standards to be maintained, and a sales agreement, which also contains restrictions and standards to protect the oil

---

1. Because Tidwell was a minor when the lawsuit was filed, his mother originally sued individually and as next friend. Tidwell attained majority during the pendency of the lawsuit in the trial court.

company's name and to maximize the profits of the enterprise. Because of these two contracts, the current legal principles governing an oil company's tort liability for injury to business patrons or dealer employees arise out of two distinct areas of the law: landlord-tenant and agency.[2]

■ Generally a landowner has no duty to prevent criminal acts of third parties who are not under the landowner's supervision or control. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex.1987). A landowner does, however, have a duty to protect invitees on the premises from criminal acts of third parties if the landowner knows or has reason to know of an unreasonable risk of harm to the invitee. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 550 (Tex. 1985). This duty developed out of the premise that the party with the "power of control or expulsion" is in the best position to protect against the harm, and when that party "by reason of location, mode of doing business, or observation or past experience, should reasonably anticipate criminal conduct on the part of third persons, . . . [that party] has a duty to take precautions against it." *Morris v. Barnette,* 553 S.W.2d 648, 649–50 (Tex.Civ. App.—Texarkana 1977, writ ref'd n.r.e.).

■ In the landlord-tenant relationship, a duty to the tenant also attaches when the landlord has the right of control over the leased premises. *See Jones v. Houston Aristocrat Apartments, Ltd.,* 572 S.W.2d 1, 2 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). The general rule is that a landlord is not liable to a lessee for injuries caused by an unsafe condition, which can include the unreasonable risk of harm from criminal intrusions, unless the landlord was aware of the latent dangerous condition at the time the premises were let. *Daniels v. Shell Oil Co.,* 485 S.W.2d 948, 951 (Tex.Civ. App.—Fort Worth 1972, writ ref'd n.r.e.); *see also* RESTATEMENT (SECOND) OF PROPERTY

§ 17.3 cmt. 1 (1977). But when a landlord retains possession or control of a portion of the leased premises, the landlord is charged with the duty of ordinary care in maintaining the portion retained. *Flynn v. Pan Am. Hotel Co.,* 183 S.W.2d 446, 451 (Tex.1944); RESTATEMENT (SECOND) OF PROPERTY § 17.3 cmt. 1 (1977). In such a situation the duties and liabilities owed by a landlord to an employee of the tenant are ordinarily the same as those owed by the landlord to the tenant. *Flynn,* 183 S.W.2d at 449.

■ Under the principles of agency law, employers are responsible for providing a safe workplace to their own employees. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 754 (Tex.1975). However, even in an employer-employee relationship, the employer is not an insurer of the employee's safety. The standard of conduct required of the employer is ordinary care based on general negligence principles. *See El Paso Elec. Co. v. Gregston,* 170 S.W.2d 515, 517 (Tex.Civ.App.—El Paso 1943, writ ref'd w.o.m.). One who retains the right of control or exercises actual control over the work of an independent contractor also owes a duty of reasonable care to the contractor's employees. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985); RESTATEMENT (SECOND) OF TORTS § 414 (1965). When determining whether a party is an employee or an independent contractor, the law focuses on the right of control over the details of the work to be performed. *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 591 (Tex.1964).

From these basic principles a hybrid body of law has developed governing oil companies and their service station lessees. In previous cases, when an oil company leased a service station to a tenant, we have focused on whether the oil company retains a right to control the details of the work performed at the service station.[3] If no right of control

---

2. *See* D.E. Evins, Annotation, *Status of Gasoline and Oil Distributor or Dealer as Agent, Employee, Independent Contractor, or Independent Dealer as regards Responsibility for Injury to Person or Damage to Property,* 83 A.L.R.2d 1282 (1962).

3. Evidence of actual control is relevant insofar as it shows a right of control not manifested by the agreements between the parties. *See Newspa-*

*pers, Inc.,* 380 S.W.2d at 592 ("When, however, the parties . . . have entered into a definite contract that expressly provides for an independent contract relationship and does not vest in the principal or the employer the right to control the details of the work, evidence outside the contract must be produced to show that despite the terms of the primary contract the true operating agree-

over the details of the operation exists, a landlord-tenant relationship exists, in which case no duty arises to the tenant's employees other than to make the tenant aware of latent dangerous conditions that exist at the time the premises are let. *Texas Co. v. Wheat,* 168 S.W.2d 632, 635 (Tex.1943) (explaining that no master-servant relationship is created so long as oil company "did not undertake to direct the details by which the results were to be accomplished"). Yet when the oil company has the right to control the details of the service station operation, something more than a landlord-tenant relationship exists, and the oil company's duty is one of ordinary care. *Humble Oil & Ref. Co. v. Martin,* 148 Tex. 175, 222 S.W.2d 995, 998 (1949) (finding a master-servant relationship created because "there [was] essentially little difference between [the station operator's] situation and that of a mere store clerk who happens to be paid a commission instead of a salary"). In determining where a particular relationship falls on the spectrum from landlord-tenant to independent contractor to employer-employee, courts have looked to the facts and details of the two contracts governing the relationship and any evidence of actual exercise of control by either party.

A number of courts, including ours, have considered the nature of the relationship between an oil company and its lessee and the duty flowing from that relationship. *See, e.g., Humble Oil & Refining Co. v. Martin,* 148 Tex. 175, 222 S.W.2d 995 (1949); *Texas Co. v. Wheat,* 140 Tex. 468, 168 S.W.2d 632 (1943); *Texas Co. v. Freer,* 151 S.W.2d 907 (Tex.Civ.App.—Waco 1941); *O'Neill v. Startex Petroleum, Inc.,* 715 S.W.2d 802 (Tex. App.—Austin 1986, no writ); *Edwards v. Neely Oil, Inc.,* 556 S.W.2d 114 (Tex.Civ. App.—Amarillo 1977, writ ref'd n.r.e.); *Beckham v. Exxon Corp.,* 539 S.W.2d 217 (Tex. Civ.App.—Houston [1st Dist.] 1976, no writ); *Willman v. Texaco, Inc.,* 535 S.W.2d 774 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.); *Space City Oil Co. v. McGilvray,* 519 S.W.2d 257 (Tex.Civ.App.—Beaumont 1975,

no writ); *Daniels v. Shell Oil Co.,* 485 S.W.2d 948 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.); *Swift v. Aetna Casualty & Sur. Co.,* 449 S.W.2d 818 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ); *McGee v. Phillips Petroleum Co.,* 373 S.W.2d 773 (Tex.Civ. App.—El Paso 1963, writ ref'd n.r.e.); *Hayes v. The Travelers Ins. Co.,* 358 S.W.2d 254 (Tex.Civ.App.—Waco 1962, writ ref'd); *Gulf Ref. Co. v. Rogers,* 57 S.W.2d 183 (Tex.Civ. App.—Waco 1933, writ dism'd by agreement); *see also Greenberg v. Mobil Oil Corp.* 318 F.Supp. 1025 (N.D.Tex.1970). Because each lease or sales agreement may be different, as may be the evidence of actual control by the oil company or station operator, each case has turned on its own facts.

Two of the cases, however, are very similar to the present controversy. In *Startex Petroleum,* an employee sued for injuries suffered during an armed robbery of a gas station and convenience store. The court of appeals reversed a summary judgment for the defendant because "genuine issues of material fact exist regarding [the lessor's] right to control the use of the premises and operation of the business." 715 S.W.2d at 804. The court stated that "the retention of such right to control would impose upon [the oil company] a duty of reasonable care to make the premises safe or warn employees of dangers inherent on them." *Id.*

The court specifically noted that the oil company prohibited the lessee from selling petroleum products other than those furnished by the lessor, that the oil company retained title to all its equipment, and that the gasoline remained the property of the oil company until sold. The oil company also mandated the hours of operation, the credit cards approved, and the price of gasoline and other products sold. Additionally, any changes made to the premises had to be approved first by the oil company. *Id.* at 805–06.

In the second case, *Daniels,* the court of appeals reached a different result when faced

---

ment was one which vested the right of control in the alleged master. Under such circumstances, the exercise of control is evidentiary only. The true test remains the right of control."); *Space City Oil Co. v. McGilvray,* 519

S.W.2d 257, 259 (Tex.Civ.App.—Beaumont 1975, no writ) ("the test remains right of control which may be shown by actual control exercised in derogation of a written contract").

with similar facts. A lone attendant was stabbed to death when the service station where he worked was robbed. While the court noted that the service station lease limited the expense that the lessee could incur for the payment of his attendants, the lessee still had the sole right to determine the number of attendants on duty. Additionally, and more significantly, the lease expressly provided that the oil company "would not have any right to direct or control the management or the operation of the business and that the lessee had control of those things." [4] 485 S.W.2d at 949. Therefore, the oil company had no duty to insure a safe workplace for its tenant's employee. *Id.* at 950–51.

■ Thus under the existing legal standard, in determining whether Exxon had a duty to insure a safe workplace for Morgan and his employees, the issue would turn on whether Exxon had the right to control Morgan "in the details of the work to be performed in the operation of the service station." *Hayes,* 358 S.W.2d at 256. We consider, however, the nature of the matters to which the right of control extends to be determinative. We think that in a case alleging negligence in maintaining a safe workplace, the court's inquiry must focus on who had specific control over the safety and security of the premises, rather than the more general right of control over operations. Issues concerning control over operations, such as who held title to the gasoline or who set the sanitation standards for the restroom, obscure the true inquiry. The focus should be on whether Exxon had the right to control the alleged security defects that led to Tidwell's injury. If Exxon did not have any right to control the security of the station, it cannot have had any duty to provide the same. If Exxon had such a right of control, on the other hand, its conduct may be found to have contributed to Tidwell's injury. Applying the traditional test of right of control over general operations simply does not an-

swer this question. It requires a factfinder to surmise a general right of control from factors unrelated to safety, and then to infer from that general control a right of control over the safety conditions that are the real issue in the case. We therefore reject this test in the context of an oil company's potential duty to provide a safe and secure workplace for its tenant service station's employees.

In the trial court, the parties presented evidence on the broader issue of Exxon's right of control over the operations of the station. The trial court made no specific findings on right of control over the security and safety of the station. Because we have announced a new standard, and have no findings on this specific issue to review, we remand the cause for a new trial in the interest of justice. TEX.R.APP.P. 180.

ENOCH, J., not sitting.

GAMMAGE, Justice, joined by DOGGETT and SPECTOR, Justices, dissenting.

I disagree with adopting the new standard in this case, because I believe the evidence clearly supports the conclusion, under the new standard as well as the old, that Exxon exercised control over safety in the workplace. The majority conveniently rejects the old test and adopts the new one to accommodate Exxon as defendant when there is no justification to excuse Exxon from liability in this case. The majority errs in doing so, and I dissent.

This court long ago recognized the potential for oil companies to use "dealership" relationships to avoid liability. It set forth the standard for liability as resting on evidence showing "the right *or power* of [the oil company] to *control* the details of the station work" with "regards [to other matters and] ... to employees." *Humble Oil & Ref. Co. v. Martin,* 148 Tex. 175, 178, 222 S.W.2d 995, 998 (1949) (emphasis added). The *Martin* case further set forth the factors which in

---

4. The lease agreement between Exxon and Morgan contained a similar clause providing that the entire control and direction of the operation of the service station remained with Morgan. While such a contractual provision is not controlling, in the absence of other evidence tending to

show actual control of workplace by Exxon, such an agreement should be considered by the court in determining the legal relationship of the parties. *Cf. Exxon Corp. v. Perez,* 842 S.W.2d 629, 630 (Tex.1992).

that case constituted some evidence of contractual right to control, or actual control. Subsequent cases have not treated the *Martin* factors as exclusive in the sense that all had to be present or that no other factor could also indicate control; rather, the treatment has been one of identifying the types of factors that can demonstrate the requisite control. *See, e.g., O'Neill v. Startex Petroleum, Inc.,* 715 S.W.2d 802, 805–06 (Tex. App.—Austin 1986, no writ); *Space City Oil Co. v. McGilvray,* 519 S.W.2d 257 (Tex.Civ. App.—Beaumont 1975, no writ).

This is not an "either-or" liability theory in that either the "landlord" Exxon or the "lessee" Morgan may be liable, but not both. Both Exxon and Morgan may be jointly (and severally) liable. The question is not, as the majority poses it, as between Exxon and Morgan, who had specific control over the safety and security of the premises. Rather, the question is whether there is evidence Exxon had the right to or exercised sufficient actual control, and was negligent in exercising that control, to the extent of proximately causing Tidwell's injuries.

Exxon has alleged "no evidence" in its point of error. The standard for determining whether there is no evidence to support a fact finding is well established. The appellate court must consider *only* the evidence and reasonable inferences therefrom which tend to support the finding, and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

Here the trial court found more than a few contractual control factors from *Martin* and its progeny, found a number of actual control factors, found that a master-servant relationship existed, and found that Exxon exercised actual control over the events and portions of the premises that led to Tidwell's injury. The majority apparently concedes there is evidence to support the findings. The problem is that the facts to be found have changed. The trial court admittedly did not find the required facts in the newly-required express terms. While the trial judge could hardly have been expected to anticipate the change in required terminology, he did make express findings which would support liability under the new requirements. Moreover, the findings under the new standard would be supported by some evidence.

Consider the evidence with respect to the specific harm that befell Tidwell—being shot during a robbery attempt. There was evidence Exxon knew or had reason to know of the danger of such occurrence on its premises, required the station owner and attendant to keep open during the evening hours (which Exxon knew presented the most danger from robberies) the bay doors through which the assailant entered, and specifically controlled and reserved the right to make physical changes for security and safety, such as adding pass-through windows with bullet-resistant glass that might have prevented or ameliorated Tidwell's injury. This is an inappropriate case to announce the majority's new standard and to require the trial court to restate the obvious in the required new language. We should wait for a case in which petitioner asks for a change in the law and which has underlying evidence indicating the change would or should make a difference. This is not it. For these reasons, I respectfully dissent.