NO. 12-07-00312-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




JERRY GLASS and TERRI FLETCHER as

the PERSONAL REPRESENTATIVES
§
 APPEAL FROM THE 369TH

OF THE ESTATE OF HERMAN GLASS

and GLASS TEXACO DISTRIBUTORS, INC.,

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF


GARY WILLIAMS,

APPELLEE/CROSS-APPELLANT


V.


MOTIVA ENTERPRISES, L.L.C. and

BORDERS & LONG OIL, INC.,
§
 ANDERSON COUNTY, TEXAS

CROSS-APPELLEES





SUPPLEMENTAL MEMORANDUM OPINION ON REHEARING


 Appellee Gary Williams filed a motion for rehearing, asserting that this court erred by failing
to address the jury's direct negligence finding and in determining that Philip Chang was not acting
in the course and scope of his agency relationship with Herman Glass and Glass Texaco Distributors,
Inc. (collectively Glass) at the time of the shooting. We overrule Williams's motion and issue this
supplemental opinion on rehearing to address the direct negligence finding and reiterate that the
evidence does not support the jury's finding regarding course and scope.


Negligence

 On rehearing, Williams complains that this court failed to address the validity of his recovery
on his direct negligence claims. He reminds us that the jury apportioned 25% of the responsibility
for his injury to the direct negligence of the Glass defendants. He references his original brief in
which he argued that Glass exercised extensive control over Chang and the operation of the station. 
He referred to Glass as "the supposed 'landlord,'" asserting that "something more than a landlord-tenant relationship exists" and that Glass owed Williams the duty of ordinary care. Therefore, he
argues on rehearing, this court should have affirmed the trial court's judgment on the direct
negligence theory.

Prior Proceedings

 In his Seventh Amended Petition, Williams alleged that the Glass defendants were liable for
Chang's actions under the theory of respondeat superior. He further alleged that all defendants


 were negligent in failing to act in a reasonably prudent manner to insure the subject Texaco gas
station was staffed by qualified, professional, and trained personnel, that agreements concerning the
subject station were read and enforced, and by not having policies and procedures in place concerning
the possession or use of firearms at the subject gas station, including any prohibition or any
requirement for minimal training.


 The jury was asked if the negligence of Chang, Herman Glass, or Glass Texaco Distributors
proximately caused the occurrence in question. The jury answered yes for each of these defendants. 
In answer to the question "what percentage of the conduct that caused the occurrence do you find
to be attributable to each of those" defendants, the jury answered 75% for Chang, 15% for Herman
Glass, and 10% for Glass Texaco Distributors. The jury also found that Chang was acting as an
agent or apparent agent for Herman Glass and Glass Texaco Distributors and acting in the scope of
his agency or apparent agency at the time of the occurrence.

 The judgment incorporated the charge of the court, including the jury's answers, in its
entirety. The trial court ordered the defendants to pay the amounts awarded to Williams jointly and
severally, pursuant to the law of respondeat superior.

 In their seventh issue on appeal, Glass attacked the negligence finding. They contended that
the trial court erred in submitting Question No. 1 to the jury insofar as it asks whether the negligence
of Herman Glass or Glass Texaco Distributors proximately caused the occurrence in question. They
also contended that the trial court erred in denying their motion to disregard the jury's finding as to
their negligence and that there is no evidence to support the jury's finding. They pointed out that
it is difficult to reconcile Williams's pleading with Question No. 1. They also argued there is no
evidence to establish the threshold duty element and no evidence that any alleged breach of duty
proximately caused the shooting.

Applicable Law

 The elements of a negligence cause of action are the existence of a legal duty, a breach of that
duty, and damages proximately caused by the breach. IHS Cedars Treatment Ctr. of Desoto, Texas,
Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004). The two elements of proximate cause are cause
in fact and foreseeability. Id. Cause in fact is established when the act or omission was a substantial
factor in bringing about the injuries, and without it, the harm would not have occurred. Id. at 799. 
Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the
dangers that his negligent act created for others and that the injured party should be so situated with
relation to the wrongful act that injury to him or to one similarly situated might reasonably have been
foreseen. Rodriguez v. Moerbe, 963 S.W.2d 808, 818 (Tex. App.-San Antonio 1998, pet. denied). 
Although proximate cause may be shown by circumstantial evidence, it cannot be established by
mere conjecture or guess, but rather must be proved by evidence of probative force. Summers v.
Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex. App.-Houston [1st Dist.] 1995, writ denied).

 A landowner who has leased his property to a third party is generally not liable to his or her
tenant or the tenant's invitees for injuries caused by third parties or an unsafe condition. See Exxon
Corp. v. Tidwell, 867 S.W.2d 19, 21 (Tex. 1993). The landowner/lessor may be liable for such
injuries if he kept some control over the leased premises. Id. In determining the extent of Glass's
duty, we consider the nature of the matters to which their right of control extends. Id. at 23. We
consider who had control over the safety and security of the premises, rather than the more general
right of control over operations. Id. The focus should be on who had the right to control the factors
that led to Williams's injury. Id. The degree of liability on the landowner is therefore in direct
proportion to the amount of control retained. See Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52, 53-54
(Tex. 1997). If Glass did not have any right to control the security of the station, they cannot have
had any duty to provide the same. Tidwell, 867 S.W.2d at 23. Furthermore, a duty to protect does
not arise in the absence of reasonably foreseeable risk. See Walker v. Harris, 924 S.W.2d 375, 377
(Tex. 1996).

Analysis

 It is undisputed that Herman Glass owned the land, building, pumps, and underground tanks
comprising the Texaco station at issue. The record contains a written, but unsigned, lease for the
premises containing terms regarding the physical upkeep of the station. The lease requires Chang
as lessee to purchase Texaco gas. The lease does not reference the daily activities involved in
running the station or the issue of security. Jerry Glass, Herman Glass's son, testified that Chang
operated the gas station that his father owned and it was Chang's responsibility to oversee the
operation of the gas station. Herman Glass had previously testified by deposition stating that he
leased all of his stations and had no employees working at his stations. He did not tell Chang there
were certain products he should not carry or that he should keep the store open until a certain time
of night. He denied knowing that Chang had a gun at the store. The record includes a copy of the
Texaco Retail Facilities Brand Standards Guide, which includes the statement that all Texaco
facilities are contractually required to adhere to the brand standards in the guide. While it includes
a short section on customer service, the guide primarily relates to the way the station looks. It
contains nothing on security.

 Chang testified that he asked Herman Glass to let him run the station. He explained that he
did not have experience in operating the station so he went to Mr. Glass's office to ask for
instructions and direction. He testified that he asked Mr. Glass for permission to buy a gun, but Mr.
Glass did not say one way or the other if he could have a gun at the station. Later in his testimony,
Chang said he let Mr. Glass know about the gun as a courtesy and Mr. Glass said "o.k." Chang
stated that every time he went to Mr. Glass's office to order gas, he told Mr. Glass "everything that
happened in his store." Because Mr. Glass instructed him, Chang thought Mr. Glass was not only
the landlord, but also his boss. If Mr. Glass told him to do anything regarding operating the station,
Chang would do it because he viewed Mr. Glass as his boss. Chang testified that he had never seen
the brand standards guide. Chang explained that he and Mr. Glass had a written lease for three years,
but after that only a verbal lease. Chang also explained that the man who ran the station before him
"ran off" and the bank took it over. The bank told him he could "have" the station for $2,000.00. 
He made repairs and did some remodeling. Chang testified that he did all the hiring, training, and
scheduling. Mr. Glass did not tell him who to hire, what to sell in the store, what prices to charge,
or what hours to operate. Mr. Glass had been to the store only four times in ten years. Chang did
not share profits or losses with Mr. Glass. At trial, Chang declined to call himself the owner of the
store, but said he is "alone." In his deposition testimony, he said he was the owner, that the business
was in his name only, and that the convenience store is under his control. At trial, counsel reminded
Chang that, in his deposition, he said no one makes decisions about how to operate the store other
than him. In response, Chang said he had not been thinking carefully when he said that but actually,
he thinks he works for Mr. Glass, so he has to listen to what Mr. Glass wants. He went on to say that
at the time his deposition was taken, in July 2005, no one had anything to do with operating that
business other than him. He said he ran the snack shop however he wanted. Then, he explained that
he liked to please Mr. Glass because Mr. Glass was a very nice person who had helped Chang a lot
and as long as Mr. Glass was happy, Chang would be able to remain there running the station. 
Chang testified that, because there was no signed lease, Mr. Glass could "get rid of" him at any time. 
Chang's financial records reflect that he was self-employed and called his business "Philip Texaco."

 While there is conflicting evidence concerning who had control over operations, there is no
evidence that Glass had control over security measures for the leased property. Mr. Glass's response
of "o.k." to Chang's revelation that he intended to keep a gun at the station could be interpreted as
permission, but there is no evidence that Chang needed Mr. Glass's permission to keep guns on the
property. As there is no evidence that Glass had the right to control security at the station, they had
no duty to provide security. See Tidwell, 867 S.W.2d at 23.

 Furthermore, there is no evidence that Glass had any reason to believe Chang did not know
how to handle a gun or that Chang's possession of a gun for his personal protection would result in
the accidental shooting of an innocent customer. Accordingly, there is no evidence of foreseeability. 
See Rodriguez, 963 S.W.2d at 818. Because there is no evidence to establish the duty element and
no evidence that any alleged breach of duty proximately caused the shooting, the trial court erred in
submitting Question Number 1 as to the Glass defendants and it erred in denying Glass's motion to
disregard the jury's finding as to their negligence. See Spencer v. Eagle Star Ins. Co. of Am., 876
S.W.2d 154, 157 (Tex. 1994). We sustain Glass's seventh issue on appeal.


Course and Scope

 In his second issue on rehearing, Williams contends this court misapplied the standard of
review in its analysis of the course and scope finding and invaded the fact finding responsibility of
the jury. Williams asserts that this court's analysis ignores the charge as given and that the evidence
establishes that Chang was acting in his role as manager of the gas station. He argues that, based
on the jury charge, to find that Chang was not in the course and scope of his agency relationship with
Glass, the jury had to find that his conduct did not further Glass's business interests and that Chang
was acting for his own purposes not connected in any way with his agency duties. He argues that
the jury's verdict is supported if a reasonable juror could conclude that displaying the weapon and
checking to see if it was loaded were actions connected to the business. He argues that, given that
Chang was running the gas station as he normally did, that is, he was behind the counter dealing with
customers while the station was open, a reasonable juror could find these activities were connected
with the operation of the station. Furthermore, Williams asserts this court erred in "unquestionably"
accepting Glass's version of events by including in the background section the statement that Davis
testified that Chang was playing around, drawing his gun as in a western story, when it went off. 
Pointing out that Davis also testified that he could not see what happened when Williams was shot,
Williams argues that if an eyewitness's location renders a clear view of the accident physically
impossible, it is no evidence of what occurred, even if the eyewitness thinks otherwise. See City of
Keller v. Wilson, 168 S.W.3d 802, 812 (Tex. 2005). Because the police report stated that Chang was
checking to see if the gun was loaded when it discharged, Williams contends the jury is to decide
which facts are most credible. 

 The charge included the explanation that "[a]n agent or apparent agent is not acting within
the scope of his agency or apparent agency if he departs from the furtherance of the principal's
business for a purpose of his own not connected with his agency or apparent agency and has not
resumed the performance of his duties." Our original opinion relied on a Texas Supreme Court case
that explained that when an agent turns aside from the work of the master "to engage in an affair
wholly his own, he ceases to act for the master and the responsibility for that which he does in
pursuing his own business or pleasure is upon him alone." Tex. & Pac. Ry. Co. v. Hagenloh, 151
Tex. 191, 201, 247 S.W.2d 236, 241 (1952). We see no discernible difference between the language
of the charge and the law as explained in Hagenloh. Williams argues that displaying the weapon
and checking to see if it was loaded were connected to the gas station's business. As we explained
in our original opinion, under the facts of this case, handling a gun does not further the business of
running Glass's gas station. When Chang went to the back of the store and retrieved his personally
owned gun, he ceased to act for Glass. Chang was acting for his own purposes not connected in any
way with his agency.

 Moreover, it simply does not matter if Chang, at the precise moment he shot Williams, was
drawing the gun as in a western story or checking to see if it was loaded. The question is whether
a reasonable jury could find that showing guns to customers and playing with guns in front of
customers were in the course and scope of Chang's agency relationship with Glass. Checking to see
if the gun was loaded cannot be construed as an act in furtherance of Chang's responsibilities at the
station. As we explained in our original opinion, from the moment Chang retrieved the gun from
the back of the store, he departed from the service of Glass and was engaged in an affair wholly his
own.

Disposition

 We overrule Williams's motion for rehearing.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered July 15, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.















(PUBLISH)