**Robert BROOKS, Appellant**

v.

**NATIONAL CONVENIENCE STORES, INC., & Stop N Go Markets of Texas, Inc., Appellees.**

No. 04–94–00065–CV.

Court of Appeals of Texas, San Antonio.

April 5, 1995.

Rehearing Overruled April 20, 1995.

Robert P. Wilson, O'Neill, Balega & Wilson, P.C., San Antonio, for appellant.

Ryan G. Anderson, Ball & Weed, P.C., San Antonio, for appellees.

Before LOPEZ, HARDBERGER and DUNCAN, JJ.

## OPINION

LOPEZ, Justice.

Appellant, a convenience store employee, brought suit to recover for his injuries suffered during an armed robbery of the convenience store. A preliminary statement of the facts of this case follows. Appellant was employed by National Convenience Stores, Inc. [NCS] to work in a Stop N Go convenience store. Stop N Go Markets of Texas, Inc. [Stop N Go], a subsidiary corporation of NCS, was the lessee of the store premises, and NCS was the guarantor of Stop N Go's obligations under the lease. Appellant was shot and injured on the job during a robbery of the convenience store. He applied for worker's compensation benefits, and received them. He then brought claims of intentional torts against NCS and negligence against Stop N Go.

NCS and Stop N Go jointly moved for summary judgment: NCS on the grounds that the worker's compensation statute granted it immunity, and Stop N Go on the grounds that it owed appellant no duty of care because it was not appellant's employer. The trial court, without stating the grounds for its ruling, granted the motion for summary judgment in full. Appellant argues, in four points of error, that the trial court erred by granting the summary judgment because Stop N Go, as the named tenant in the lease of the premises, owed a duty to protect appellant from harm, and because a material issue of fact existed as to its performance of that duty. The summary judgment granted as to NCS is not challenged. We sever and reverse the portion of the judgment which disposes of appellant's causes of action against Stop N Go.

### I. Summary Judgment

#### a. Standard of Review

The party moving for summary judgment must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Nixon*, 690 S.W.2d at 548–49; *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in his favor. *Nixon*, 690 S.W.2d at 549; *Montgomery*, 669 S.W.2d at 311.

A summary judgment may not be affirmed on any grounds not presented in the motion for summary judgment. *Villanueva v. Astroworld, Inc.*, 866 S.W.2d 690, 693 (Tex. App.—Houston [1st Dist.] 1993, writ denied). When, as in the instant case, the trial court's order does not specify the grounds relied on for the ruling, the summary judgment will be affirmed if any of the grounds advanced are meritorious. *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 79 (Tex.1989); *Villanueva*, 866 S.W.2d at 693.

#### b. Proper Summary Judgment Evidence

In his argument on appeal, appellant claims that appellees presented no summary

judgment evidence other than the affidavit attached to the motion for summary judgment. He contends the affidavit is one of an interested party, and was insufficient to support summary judgment. Appellant's contention that the affidavit was the only evidence set forth by appellees is not borne out by the record. Appellees also filed a reply to appellant's response to its motion for summary judgment over two months in advance of the hearing date, and attached several depositions and exhibits. After the hearing, the trial court granted summary judgment for appellees based on "the pleadings and the evidence submitted in support of and in opposition to said motion and hearing arguments of counsel." Appellant does not state why the evidence proffered by appellees in connection with their reply to appellant's response should not be considered. The evidence, and appellees' reply, raised no additional grounds for summary judgment, but rather reiterated and supported the assertions made in the motion for summary judgment and corresponding affidavit. See McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex.1993) (summary judgment must stand or fall on grounds expressly presented in motion). Such evidence was properly considered by the trial court in the absence of a timely objection by appellant. Tex.R.Civ.P. 52; Knapp v. Eppright, 783 S.W.2d 293, 296 (Tex.App.—Houston [14th Dist.] 1989, no writ). We reject appellant's contention that the affidavit constituted the whole of appellees' summary judgment evidence, and hold that the evidence attached to appellees' reply was properly included in the record before the trial court.

## II. Analysis

### a. Cause of Action

█ Appellant asserted in his first amended petition that Stop N Go committed eight specific acts of negligence. Each alleged act constituted either a failure to provide appellant a safe place to work or a failure to warn appellant prior to his employment with NCS of the risks associated with working in a convenience store.[1] In his petition, appellant further stated that Stop N Go's duty to protect him, an NCS employee, arose out of Stop N Go's assumption of obligations under "its leases," participation in the operation of the store, and receipt of profits from the store. By listing specific acts of negligence, appellant limited his cause of action against Stop N Go to one in negligence in maintaining a safe workplace. See Mobil Chem. Co. v. Bell, 517 S.W.2d 245, 254 (Tex.1974).

█ The essential elements of a negligence cause of action are: (a) the existence of a duty owed by one party to the other; (b) a breach of that duty; and (c) damages proximately caused by that breach. El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987). To defeat a claim of negligence by summary judgment, a defendant must disprove at least one of these essential elements as a matter of law. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.1991).

1. The eight specific acts of negligence were:
 1. Failure to insure that employees of the Defendant, NCS, were provided a "safe place to work" as was represented to the Plaintiff before he agreed to come to work for the Defendant, NCS;
 2. Engaging in, cooperating in, and instituting certain procedures designed to severely limit the amount of money that the Plaintiff had access to should he be faced with an armed robbery, thereby placing him in great danger;
 3. Failure to institute security procedures necessary to protect the employees of NCS from violence associated with armed robberies;
 4. Failure to warn the employees of the Defendant, NCS, of known dangers of said employment;
 5. Failure to instruct the employees of NCS to known dangers of said employment;
 6. In negligently misrepresenting to Plaintiff that prior to his employment with the Defendant, NCS, that the store in question was a "safe place to work;"
 7. Failure to adequately warn potential criminals that there was a limited amount of cash available for theft, thereby angering them once they learned that said fact after they had committed a crime; and
 8. Failure to disclose to the Plaintiff before his employment with the Defendant, NCS, the results of studies, surveys, and/or analysis relating to his risks of serious personal injury as a result of being employed in a "convenience" store.

### b. Motion for Summary Judgment

Appellees moved for summary judgment and asserted in their motion for summary judgment without further explanation or argument:

> Plaintiff has never been an employee of Stop N Go. Stop N Go did not own the property nor operate the business where plaintiff was employed and where he sustained his subject injury.

In support of their motion, appellees attached the affidavit of A.J. Gallerano, vice president and secretary of both NCS and Stop N Go. Gallerano stated in his affidavit that appellant was not employed by Stop N Go, and that NCS owned and operated the store where appellant worked. Stop N Go's motion for summary judgment, stated another way, was based on an assertion that it owed appellant no duty of care. The absence of a duty defeats a cause of action for negligence. *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993).

Appellant responded to the motion for summary judgment by setting forth evidence which he asserted presented a material issue of fact as to whether Stop N Go participated in the operation of the store. Appellant argued that Stop N Go was the tenant under the lease to the premises, was involved in certain decisions relating to the operation of the store, and that Stop N Go's negligence with respect to these decisions exposed appellant to the danger which caused his injury. The trial court granted the summary judgment.

### c. Duty

■ After the trial court granted appellees' motion for summary judgment, but before appellant filed his brief in this court, the Texas Supreme Court issued its opinion in *Exxon Corp. v. Tidwell,* 867 S.W.2d 19 (Tex.1993). Appellees argue that *Exxon* delineates Stop N Go's duty under the facts of this case. In *Exxon,* a service station employee was shot during a robbery in the course of his employment. The employee sued the oil company which owned the prem-

ises leased to his employer, who was an individual dealer. *Exxon,* 867 S.W.2d at 20. Like in the instant case, the plaintiff's cause of action was based on the oil company's negligent failure to maintain a safe workplace. *Id.* The supreme court noted that relationships between oil companies and individual service station dealers typically are something more than landlord-tenant but do not reach the level of employer-employee, and that the relationships determine the extent of the oil companies' duty towards service station employees. For example, a landlord is not liable to a tenant for injuries caused by an unsafe condition unless the landlord was aware of the latent dangerous condition at the time the premises were let. But when the landlord retains some possession or control over a portion of the premises, it is charged with the duty of ordinary care to the tenant and its employees in maintaining the portion retained. *Exxon,* 867 S.W.2d at 21. Employers, on the other hand, have a nondelegable duty of ordinary care to provide a safe workplace for their employees. *Exxon,* 867 S.W.2d at 21. However, the supreme court concluded that, no matter what the relationship was between the oil company and the employee, the true test to determine whether the oil company had a duty to maintain a safe workplace is whether the oil company reserved a right of control or exercised actual control *specifically* over the safety and security of the workplace:

> We think that in a case alleging negligence in maintaining a safe workplace, the court's inquiry must focus on who had specific control over the safety and security of the premises, rather than the more general right of control over operations. . . . The focus should be on whether Exxon had the right to control the alleged security defects that led to Tidwell's injury. If Exxon did not have any right to control the security of the station, it cannot have had any duty to provide the same.

*Exxon,* 867 S.W.2d at 23. With this holding, the supreme court designated a new standard of review in cases involving negligence in maintaining a safe workplace. Plaintiffs

must now show that the party they assert had a duty to provide a safe workplace had actual control or a right of control over the specific aspect of the safety and security of the premises which led to the injury. Duty in such cases can no longer be inferred from evidence showing actual control or a right of control over the general operation of the workplace. *Exxon*, 867 S.W.2d at 23.

Appellant asserts that *Exxon* is distinguishable from the instant case in that *Exxon* involved the liability of a landlord, not a tenant. Appellant asserts, without citing any case law, that "[a]s tenant, [Stop N Go] was the corporation actually leasing the property and, as such, it had the direct duty to protect invitees." Appellant ignores the language of its own pleading which clearly alleged negligence in maintaining a safe workplace. *See, supra* n. 1. Under *Exxon*, only corporations which have the right to control or actually control safety and security policies of the workplace have a duty to the workers to maintain a safe workplace. *Exxon*, 867 S.W.2d at 23. Further, the similarities between *Exxon* and this case are more significant than the differences. In both cases, an employee attempted to hold someone not his employer, but with contractual ties to both the land and the employer, liable for negligence in failing to prevent harm inflicted by a third party which would not have occurred but for the operation of the workplace or business. It is important to note that the harm suffered in each case was not related to some condition on the premises which owners or occupiers were actually, contractually or impliedly required to maintain, but rather occurred because a business was operated therein. We hold that *Exxon* is applicable to the instant case. Therefore, under *Exxon*, if there was no material issue of fact with respect to Stop N Go's actual control or right of control over the security defects in the Stop N Go store which led to appellant's injury, then summary judgment was proper.

**d. The Evidence**

We now outline the summary judgment evidence in order to determine whether there is a material issue of fact which precludes summary judgment, using the standard in *Exxon*. *Exxon*, 867 S.W.2d at 23.

**1. Gallerano Deposition**

The deposition of A.J. Gallerano, vice president and secretary of both NCS and Stop N Go was part of the summary judgment evidence. Gallerano testified that the relationship between NCS and Stop N Go was that of a parent corporation and its subsidiary. He asserted that NCS was doing business as Stop N Go in Texas, and that all decisions with respect to the stores were made by NCS alone. However, he testified that there were no documents available which would describe the legal relationship between NCS and Stop N Go. Instead, he produced a disclosure statement filed by NCS and its subsidiaries, including Stop N Go, in bankruptcy court. Stop N Go was described in the statement as "the *operator* of convenience stores in the State of Texas. As such, Stop N Go Texas holds title to certain real property leases in Texas and *owns certain equipment and merchandise.*" (emphasis added). Gallerano testified that this portion of the disclosure statement was qualified by other portions, which stated that NCS owned 100% of Stop N Go's stock and that "[a]s of December 9, 1991, NCS operated 985 specialty convenience stores in seven markets in the Sunbelt states under the name Stop N Go.... Operating under the Stop N Go name, NCS' stores are well recognized among customers in its market."

Gallerano admitted that Stop N Go was the actual lessee of the convenience store premises, but stated that it was in name only and that NCS was the actual party who exercised the rights granted to the lessee under the lease. He further testified that the lease was in Stop N Go's name, and not NCS's name, "for tax reasons." According to the lease, which was an exhibit to the deposition, Stop N Go, as tenant, was obligated to "use the Leased Premises for the purpose of *operating* a drive-in type convenience store...." (emphasis added). The lease further states that the tenant has the absolute right to sublet and assign its rights under the lease, and further has the absolute right to

discontinue the operation of any business on the premises so long as it continues to pay the rent. In all respects, the operation of the convenience store was to be controlled by the tenant, Stop N Go, and not the landlord, who is not a party to this lawsuit. NCS is mentioned in the lease as the guarantor of Stop N Go's obligations as a tenant.

Also attached as an exhibit to Gallerano's deposition was an income statement compiled by NCS entitled "National Convenience Stores Incorporated and Subsidiaries Income Statement." The statement includes columns for NCS, Stop N Go, and two other subsidiaries, as well as a column entitled "Consolidated Total." The Stop N Go column seems to reflect that in 1987 Stop N Go had a gross income of over 500 million dollars, paid salaries and wages of over 49 million dollars, and incurred other expenses, including bad debts, rents, taxes, advertising and "other deductions," all totalling millions of dollars. The NCS column reflects that NCS incurred the same types of expenses but in different, smaller amounts. Gallerano refused to speculate as to where Stop N Go gets its income. Also, Gallerano testified repeatedly that Stop N Go had no employees, yet the income statement seems to reflect that Stop N Go paid salaries and wages.

Gallerano also produced several documents which related to NCS safety and security policies in convenience stores. Some exhibits appear to be NCS in-house documents relating to safety policies and instructions on training employees with regard to safety. They do not mention Stop N Go. Another exhibit was a pamphlet entitled "The Good Neighbor Team—NCS Employee Handbook." The Stop N Go logo is on the back cover of the pamphlet. A second exhibit was a series of documents entitled "A Safe Place to Work—What You Can Do to Help Prevent Robbery." The Stop N Go logo is on the first page, and the NCS logo is on the back page. Gallerano was not willing to speculate as to which entity or department produced or authored these safety documents.

### 2. Bravenec Deposition

Included in the summary judgment evidence was the deposition of Ray Bravenec, who was employed by NCS as a regional loss prevention manager. When questioned as to the relationship between NCS and Stop N Go, Bravenec testified that his understanding of the relationship between NCS and Stop N Go was that NCS did business in Texas as Stop N Go. Bravenec further testified as follows:

Q: "Who decided to limit the amount of money contained in the cash register and accessible to employees in the event of a robbery?" Was—is that a company policy?

A: Yes, sir.

Q: What is the company policy?

A: That the cash register should not contain more than $50.00 in bills.

Q: Okay. Is that a policy that was established by a National Convenience Stores and Stop–N–Go Markets of Texas, Inc.?

A: Yes, sir.

* * * * * *

Q: "Who decided to have a time lock safe with limited access to employees?"

A: That would have been a group of the executives, management people make that decision.

Q: And these management people are executives—executives or employees?

A: Of National Convenience Stores, yes, sir.

Q: Of National Convenience Stores or Stop–N–Go Markets of Texas, Inc.?

A: Right.

* * * * * *

A: It's a booklet that says, "A safe place to work."

Q: And who puts that booklet out?

A: The corporate loss prevention department in conjunction with corporate training and development.

Q: Okay. What company puts that out?

A: National—

Q: Is that a—

A: National Convenience Stores, Stop–N–Go Markets."

The booklet entitled "A Safe Place to Work" was attached to the deposition as an exhibit. The booklet has the NCS logo on it and reflects on the back page that it was developed by the Corporate Loss Prevention Department. A pamphlet attached to the deposition was also entitled "A Safe Place to Work." The Stop N Go logo is on the front cover as well as the last page. The NCS logo is on the back page, with the notation "Corporate Training and Development." Bravenec testified that the booklet and pamphlet were given to new NCS employees during their training period.

### e. Conclusion

#### 1. Summary Judgment was Improper

 Again, we stress that when reviewing a summary judgment, every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in his favor. *Nixon*, 690 S.W.2d at 549; *Montgomery*, 669 S.W.2d at 311. On review of the evidence, we hold that there is a material issue of fact, even under the more stringent *Exxon* standard, on Stop N Go's duty towards appellant to maintain a safe workplace. We first note that *Exxon* was not a summary judgment case. Appellant is not required to prove his case on summary judgment; he is only required to show that there is a material issue of fact precluding summary judgment.

Appellees stated in their motion for summary judgment that Stop N Go did not owe appellant a duty to maintain a safe workplace because Stop N Go did not employ appellant, did not operate the store, and did not own the store. The facts that Stop N Go did not employ appellant and did not own the premises are undisputed, but are not dispositive. However, the question as to Stop N Go's rights or duties with regard to the operation of the business is an unsettled one. Appel-

lees maintain that NCS was "doing business as" Stop N Go, and therefore Stop N Go owed appellant no duty. However, even if this contention was true (and appellees presented no law in support of it) appellees' own testimony and documents are internally inconsistent on this issue. Under the lease, Stop N Go was responsible for the operation of the store, and there is no evidence that Stop N Go somehow assigned this right to NCS. Also, according to the disclosure statement filed in bankruptcy court, Stop N Go was a corporation which operated convenience stores.

Furthermore, appellees' testimony and documents are internally inconsistent as to what Stop N Go's responsibilities, if any, were with respect to security. Ray Bravenec, the NCS regional loss prevention manager referred to both Stop N Go and NCS when answering questions on responsibility for security procedures in Stop N Go stores. Pamphlets on safety and security with regard to robberies exhibit the Stop N Go logo boldly on front. Taking all the reasonable inferences in favor of appellant, we hold that appellees have failed to establish as a matter of law that Stop N Go exercised *no* control or had *no right* of control over the safety and security of the workplace with respect to robberies. Even if the evidence did not conclusively show that Stop N Go had a duty, the appellees have failed to negate that duty. Finding that, there is a material issue of fact as to whether Stop N Go owed a duty to appellant to maintain a safe workplace.

#### 2. Worker's Compensation Immunity as to Stop N Go

 As previously stated, the summary judgment as to NCS was based on the exclusive remedy (immunity) provision of the Worker's Compensation Act. The dissent suggests that an argument can be made that Stop N Go also had a possible defense to appellant's claim under that provision, which states:

The employees of a subscriber ... shall have no right of action against their employer or against any agent, servant or

employee of said employer for damages for personal injuries....

TEX.REV.CIV.STAT.ANN. art. 8306 § 3(a) (Vernon Supp.1995) (repealed 1991) (similar provision currently at TEX.LABOR CODE § 408.001(a) (Vernon 1995)). However, we do not address this issue for one fundamental reason: it was never raised below. NCS and Stop N Go filed joint answers to appellant's petition, joint motions for summary judgment, and a joint reply brief on appeal. However, within these documents the two entities are addressed separately. It is clear that Stop N Go did not plead the worker's compensation exclusive remedy provision as an affirmative defense.[2] *Cf. Bradt v. West*, 892 S.W.2d 56, 66 n. 7, 80 (Tex.App.—Houston [1st Dist.] December 22, 1994, writ requested) (immunity is an affirmative defense). It is further clear that Stop N Go did not raise that issue as a ground for summary judgment.[3] *Cf. Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992) and *W.C.W. v. Bird*, 840 S.W.2d 50, 53 (Tex.App.—Houston [1st Dist.] 1992), *reversed on other grounds*, 868 S.W.2d 767 (Tex.1994) (holding that when immunity is not raised as a ground for summary judgment, affirmance on that ground is not permissible). The dissent ignores the rudimentary rule that a trial court has no discretion to grant summary judgment on a ground not expressly stated in the motion. TEX.R.CIV.P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979). It is simply incontrovertible that we do not have authority on appeal to *sua sponte* determine that "justice and fairness" mandate affirmance of a summary judgment on a theory not presented by the movant.[4] The dissent opines that the parties simply "fail[ed] to recognize the true legal significance" of Stop N Go's status for the purposes of the worker's compensation statute. We have too much respect for the corporate litigants in this case to conclude that the "failure" to raise this apparently valid affirmative defense was anything but a conscious decision. We therefore do not decide on appeal whether Stop N Go is an "agent, servant or employee" of NCS under the worker's compensation statute, or whether appellant's claim against Stop N Go is barred by the statute. *Cf. McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex.1964); *Long v. Turner*, 871 S.W.2d 220, 223 (Tex.App.—El Paso 1993, writ denied).

Because the portion of the summary judgment relating to appellant's cause of action against NCS is not challenged on appeal, and because we find no error, we affirm that portion. We agree that the judgment is

---

2. Defendants' First Amended Original Answer raised three defenses: (1) a general denial by both defendants; (2) that Stop N Go did not owe plaintiff any legal duty because it did not employ plaintiff; and (3) that plaintiff's common law claims against NCS were barred by the Worker's Compensation Act.

3. Defendants' Second Amended Motion for Summary Judgment has four numbered paragraphs and a prayer. Paragraph I reflects that an affidavit is attached to the motion. Paragraph II states that Stop N Go never employed plaintiff, or owned or operated the business. Paragraph III states that NCS employed plaintiff, and was a subscriber to the Worker's Compensation Act, having procured an insurance policy. Paragraph IV states that plaintiff received benefits from "aforesaid policy of insurance" for his injury, and is barred from seeking damages for the injury by the exclusive remedy provision of the Worker's Compensation Act. The motion concludes with a prayer for summary judgment. We conclude that this motion for summary judgment never raises the ground that Stop N Go is pro-tected by the exclusive remedy provisions of the Worker's Compensation Act. No connection is made in the motion between NCS, the employer, and Stop N Go. Instead, the motion tracks the defendants' answer, which states that because Stop N Go did not employ plaintiff, it owed him no legal duty. *See Shutters v. Domino's Pizza, Inc.*, 795 S.W.2d 800, 803 (Tex.App.—Tyler 1990, no writ) (summary judgment in personal injury action could not be sustained, despite apparent validity of argument concerning exclusive remedy provisions of Worker's Compensation Act, when motion alleged only that plaintiff was not injured in the course and scope of employment).

4. Even a "liberal construction" of the Texas rules of appellate procedure do not allow us to contradict clear mandates from the Texas Supreme Court. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992) ("A summary judgment cannot be affirmed on a ground not specifically presented in the motion for summary judgment.").

improper with respect to appellant's cause of action against Stop N Go. We therefore order that the portions of the judgment which relate to Stop N Go are reversed and ordered severed and remanded for proceedings in accordance with this court's opinion.

DUNCAN, Justice, dissenting.

As phrased by Stop N Go and the majority, the issue in this case is whether Stop N Go owes Brooks a duty to provide a safe workplace under the "right to control safety and security of the workplace" test set forth in *Exxon Corp. v. Tidwell*, 867 S.W.2d 19 (Tex.1993). Applying this test to the summary judgment proof, the majority holds that there is a "material issue of fact as to whether Stop N Go owed a duty to appellant to maintain a safe workplace."

In my view, a fact issue on right to control is immaterial in the context of this case; accordingly, I neither agree nor disagree with the majority as to whether the summary judgment proof raises a fact issue as to Stop N Go's right to control. My disagreement with the majority arises instead out of its reliance on the *Exxon* right to control test and its interpretation of Rule 166a(c), Tex. R.Civ.P., as precluding an affirmance. I would hold that, as a matter of law, a wholly-owned subsidiary is an "agent" of its parent for purposes of the Workers' Compensation Act and, if either provided workers' compensation coverage, neither is subject to suit by an employee. I would further hold that Rule 166a(c) does not preclude, and Rule 81(b)(1), Tex.R.App.P., mandates, affirmance.

In my view, a single undisputed fact so distinguishes this case from *Exxon* as to render the *Exxon* test inapplicable: Stop N Go is a wholly-owned subsidiary of NCS, Brooks' employer. The importance of this fact is evidenced by examining the effect that a judgment against Stop N Go would have in this case. When an employee recovers on a third-party claim, the workers' compensation carrier is subrogated to the employee's recovery to the extent of the benefits paid; the third-party tortfeasor is thus ultimately made to bear the loss occasioned by its wrongful conduct. *See Pan American Ins. Co. v. Hi–Plains Haulers*, 163 Tex. 1, 350 S.W.2d 644 (1961); Tex.Lab.Code § 417.001(b) (Vernon Pamph.1995) (similar provision formerly located at Tex.Rev.Civ. Stat.Ann. art. 8307, § 6a).

NCS's compensation carrier will thus have a right of subrogation against Stop N Go to the extent of the benefits paid. But, because Stop N Go is a wholly-owned subsidiary of NCS, this right of subrogation will exist only in the most theoretical sense. If Brooks recovers a judgment against Stop N Go, Brooks or NCS's compensation carrier or both will—directly or indirectly—collect from NCS, Stop N Go's sole shareholder. Therefore, regardless of whether a right of subrogation is actually asserted, a judgment against Stop N Go will deprive NCS of the benefit of affording Brooks workers' compensation coverage—the exclusive remedy bar of the Workers' Compensation Act.[1]

For this reason alone, I would not apply the *Exxon* test. I would instead hold, as a matter of law, that the undisputed fact that Stop N Go is a wholly-owned subsidiary of NCS conclusively establishes that Stop N Go is an "agent" of NCS; therefore, if either NCS or Stop N Go provided workers' compensation coverage, neither is subject to suit by an employee for breach of a duty to provide a safe workplace. *Cf. McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex.1964) (agents, servants, and employees protected by exclusive remedy bar, and whether defendant is agent of employer depends upon whether employer had right to control physical details of defendant's performance); *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex.1975) (corporate fiction disregarded in tort case "where management and operations [of a parent and its wholly-owned subsidiary] are assimilated to the extent that the

---

1. Tex.Lab.Code § 408.001 (Vernon Pamph.1995) (similar provision formerly located at Tex.Rev.Civ. Stat.Ann. art. 8306, § 3(a)).

subsidiary is simply a name or conduit through which the parent conducts its business"); [2] *Lawler v. Dallas Statler–Hilton JV,* 793 S.W.2d 27, 34 (Tex.App.—Dallas 1990, writ denied) (holding that both joint venturer and joint venture are employers of employee of joint venture for purposes of workers' compensation); *Watson v. Nortex Wholesale Nursery,* 830 S.W.2d 747 (Tex.App.—Tyler 1992, writ denied) (whether employee even has cause of action against corporation that is intimately related to employer "conjectural").

My final point of disagreement with the majority is on the proper interpretation of Rule 166a(c) in the unusual context of this case. I recognize that our summary judgment rule provides that a motion for summary judgment "shall state the specific grounds therefor." TEX.R.CIV.P. 166a(c). The rule also provides, however, that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for *reversal.*" TEX.R.CIV.P. 166a(c) (emphasis added). Nowhere does Rule 166a prohibit an affirmance on an unpresented ground. And nowhere does Rule 166a purport to alter Rule 81(b)(1), TEX.R.APP.P., which provides that "[n]o judgment shall be reversed on appeal ... unless ... the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court...." TEX. R.APP.P. 81(b)(1). This aspect of Rule 166a(c) and Rule 81(b)(1) appear to flow directly from the mandate of Rule 1 to liberally construe the rules "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law" ... "with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable...." TEX.R.CIV.P. 1.[3]

In my view, Rule 166a(c), when construed in the light of Rules 1 and 81(b)(1), should not require a remand when a dispositive issue has been addressed and conclusively established by the summary judgment proof, and there is no possibility that the non-movant can prevail on remand. As Justice Hecht has noted: "All ... rules can be applied under the rubric of literal construction to defeat their own purposes unless those purposes govern and define the rules. The underlying principles must control." *McConnell v. Southside I.S.D.,* 858 S.W.2d 337, 347 (Tex.1993) (Hecht, J., dissenting). I believe this case clearly demonstrates that a rigid construction of Rule 166a(c) may defeat rather than serve the purpose of the rule.

The parties' summary judgment proof addresses and conclusively establishes that Stop N Go is a wholly-owed subsidiary of NCS. In another context, this might amount to a merely uncontroverted fact that defeats the cause of action on an unpresented ground; in that situation, I believe Rule 166a(c) would require a remand to enable the non-movant to present additional summary judgment proof to raise a fact issue on the unpresented ground. Indeed, that is the purpose of the rule. But, in the context of this case, the fact is not simply uncontrovert-

---

**2.** In my view, there is no evidence in the summary judgment record before us to suggest that NCS operated Stop N Go as anything other than a business conduit. The undisputed summary judgment proof establishes that NCS alone hires employees and maintains bank accounts; NCS pays for all merchandise placed in Stop N Go stores; NCS pays all rent, salaries, and other expenses, but for tax purposes "attributes" these expenses to the appropriate Stop N Go subsidiary; both Gallerno and Bravenec testified, and the disclosure statement filed by NCS in the bankruptcy court unequivocally states, that NCS operates the stores "under the name of Stop N

Go." Indeed, in describing the relationship between NCS and Stop N Go, Bravenec referred to "National Convenience Stores d/b/a Stop–N–Go."

**3.** At the time Rule 1 was written, of course, the Texas Rules of Civil Procedure included the rules governing appellate procedure. The fact that the 1986 enactment of the Texas Rules of Appellate Procedure separated the trial and appellate rules is, in my view, of no importance. Wherever located, the rules must be interpreted in the spirit mandated by Rule 1.

ed; it is uncontroverted, incontrovertible, and dispositive. In my opinion, Brooks cannot recover against Stop N Go, regardless of the legal theory employed and regardless of the presence or absence of any other fact. This is simply not a case in which a remand will achieve the fundamental goal of fairness underlying Rule 166a(c). Rather, this is a case in which the defect cannot be cured on remand. Accordingly, remanding this case can and will achieve nothing more than imposing additional costs and delay on the litigants and our taxpayer-supported judicial system, contrary to the letter and the spirit of Rule 1. I may be wrong, but I cannot and will not attribute that intent to our supreme court either in its promulgation of Rule 166a(c) or in its decisions in *Clear Creek*[4] and *McConnell,* neither of which involved the unusual circumstances before this court in this case—the parties' failure to recognize the true legal significance of the undisputed, material fact of Stop N Go's status as a wholly-owned subsidiary of Brook's employer. *See McConnell,* 858 S.W.2d at 344, (Gonzalez, J., concurring in judgment only), 347, 349 (Hecht, J., joined by Cornyn, J., dissenting) (dissenting in part because of the plurality's failure to apply harmless error standard and noting that, insofar as the plurality's opinion purports to preclude summary judgment on a ground established by the summary judgment evidence, it is dicta), *id.* at 349–50 (Enoch, J., joined by Phillips, C.J., dissenting) (dissenting because of the plurality's failure to apply harmless error standard).

For these reasons, I respectfully dissent.

---

**4.** *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex.1979).